Titghman C. J.
This is an action of trespass, vi et armis, 1 for breaking and entering the plaintiff’s house. The defendants justified under a writ of replevin for a coat and sundry articles of wearing apparel, in which Esler, a minor, by Trout, his guardian, was plaintiff, and John Kneas, the plaintiff in this action, defendant. The writ was directed to Jacob Fitler, (one of the defendants,) sheriff of the pity and county of Philadelphia. Pidgeon, the other defendant, is a deputy sheriff. Pidgeon, Trout and Esler went to the plaintiff’s house, entered it and searched for the goods, but did not find them. The jury found for the plaintiff 200 dollars damages, and the cause comes before the court on a motion for a new trial. Judge Brackenridge, before whom it was tried, has reserved two points for consideration. First, Whether Trout, being the guardian of Esler, (the plaintiff in the replevin,) and also a deputy sheriff, could lawfully execute the .writ; • and if he could not, whether all those who accompanied him, would not be trespassers. Second, Whether, supposing the writ to have been executed by a legal officer, the defendants did not conduct themselves in so irregular a manner as to make them trespassers. ■ . • ' : 1 , ■
1. Trout, being the guardian on record, and thus a party to the suit, and liable to costs, could not properly execute the writ. But it was very proper that both he, and the minor Esler, should accompany Pidgeon, the deputy sheriff, in .order to shew the property. They found no property; they touched nothing which belonged to the plaintiff in this suit; hut they said, or some one of them said, that they were she~ riff’s ojjicers ; from whence it is inferred that Trout acted as aa officer. I cannot say that the evidence is satisfactory o.n *264 this point. Saying that they were sheriff’s officers might, very naturally, mean that they were acting under the authority °f die sheriff; for they had a writ of replevin, and Pidgeon was a deputy sheriff. They could not mean that they were, all, sheriff’s officers, because -Ester had no pretence for that name. As no act, therefore, was done by Trout, to shew that he took part in the execution of the writ, I should think it would be rather straining the evidence to say that he acted as an officer. But if he did, that would not make either Pidgeon or Ester guilty, because Pidgeon had a right to act under his authority as deputy sheriff, ánd Ester had a right to accompany him to shew the property.
2. I see nothing in the conduct of the defendants which would make them trespassers, supposing the entry into the bouse to have been made by lawful officers. It does not appear how they got into the house, and it cannot be presumed that they broke the outer door. The witnesses speak only of their conduct within the house; they were guilty of no violence, rudeness, or incivility. One of the rooms they abstained from entering, and not finding the goods described in the replevin, and being warned not to make further search, they desisted, and went quietly away. There was good reason to think that Ester’s clothing would be found in Kneas’s house; he had lived with Kneas as an apprentice, though not bound. While he lived with him he was in possession of the clothes; he did not bring them away with him, and before the issuing of the yrrit he demanded them, and was refused. All this was proved, and the judge gave his opinion that there was good ground for supposing that the clothes would be found in Kneas’s possession. It has been contended, on the part of the plaintiff, that the sheriff’s officer who executes a replevin, enters the defendant’s house at his peril, although the outer door is open, and that he is a trespasser if the goods are not found there. But I do not take the law to be so. The writ commands the sheriff to replevy certain goods which are in the possession of the defendant. He has a right, therefore, to enter the defendant’s house for the purpose of searching for the goods. I say nothing of his right to break the outer door in case of being- refused admittance, because the point does not arise in this case. Hard indeed would be the condition of the officer if the legality of his entry depended ón .the contingency of his find- *265 mg the goods, and strange would be the law if the defendant In replevin, by adding wrong to wrong, by secreting or removing from his house the goods which he had unlawfully taken, should have an action against a minister of justice for coming to search, according to the command of his writ, for ¡ what there was good reason to suppose would be found. Filler, the sheriff, had no personal part in this business ; he is sued as being responsible for the conduct of his deputies. He is responsible; but if they are not guilty, neither can he be. Upon the whole, considering the points of law reserved by the judge, and the evidence reported by him, I am of opinion that the verdict was wrong, and therefore there should be a new trial.
Yeates J.
It is equally our duty to protect the ministers of justice, conducting themselves with propriety, ip the execution of their official duties, as to punish those officers who have abused the authority reposed in them by the law, whether it be brief, or long and plenary. On an attentive consideration of the evidence given on the trial, I agree with the judge who tried the cause, that there was strong colourable ground for taking out the replevin, and the highest probability that the articles mentioned therein would be found in the house of Kneass. If those articles really were there, I cannot doubt the right of the sheriff, or his deputies, to search the house, provided that in so doing, they do not exceed the limits prescribed to him by the law. How, otherwise, can it be expected that the process shall be served. It does not appear, by any part of the testimony, that any violence was done to any part of the house of the plaintiff in error, by the defendant. The chamber door was proved to have been open. That a sheriff may break open doors to execute a replevin in certain instances, appears by the_ authorities cited from F. N. B. 157, note b. and Dalt. Shff. 353. But I take the rule of law to be correctly stated by Judge Foster, in his discourse on the Crown Law, p. 320, that in every case, whether civil or criminal, where doors may be broken open 'in order to arrest, there must be a notification of the party’s intention, and a demand and refusal before they can proceed to that extremity. Here I can discover no doors broken open, nor any wanton outrage, either by words or deeds, when it was attempted to serve the replevin. Announcing the ob* *266 ject of their visit by saying “ They had come for the young man’s clothes,” cannot be deemed an instance of incivility.. But’lt has been urged, that the replevin having been instituted by Trout, as guardian of Esler, the plaintiff, the former could not' enter the house in order to serve the process, and that the association of him, in this case, rendered all the defendants trespassers ab initio, by the abuse of authority. The judge wished those points to be reserved for a discussion in Bank. It was admitted that Pidgeon and Trout were two of the sheriff’s deputies, but it is flatly denied that Trout came there to serve the replevin. It is true, the plaintiff’s brother swore he had seen the defendants up stairs, and demanded their business, and that they said they were sheriff’s officers, and had authority to break doors, locks, &c. At his request the replevin was shewn to him. Which of them made use of the foregoing expressions does not appear ; but it is perfectly clear that if Trout came to execute the process, it was wholly unnecessary to call Pidgeon to his aid. The sheriff is bound to replevy the specific goods, mentioned in the writ, at his own risk, unless the defendant interposes a claim of property, in which case he must give bond to abide the event of the suit. The law is not so unreasonable as to expect the sheriff to comply with the exigency of the writ delivered to him, unless the goods are shewn to him. The plaintiff, in the replevin, or some one for him, is bound to shew the goods, which are, unknown, to the sheriff, and it follows as a matter of course, that the guardian of an infant plaintiff would have a legal right to enter the defendant’s .house, where there is reasonable ground to suppose the property is deposited, in order to give the necessary instructions, at least until his entry is forbidden. Where the act is authorised bylaw, it cannot be denominated a trespass. Putting the case, however, in the strongest point of view against Trout, that he had attempted to serve the writ, and had abused his authority, it remains to be shewn that this would render all the defendant’s trespassers ab initio, and punishable as such. My mind is satisfied that the case demands a rehearing, and therefore I am of opinion that the verdict be set aside, and a new trial awarded.
Brackenrjdge J. was absent in consequence of indisposition.
New trial awarded.